UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

NAVTEJ SINGH GILL,

Petitioner,

v.

WARDEN, IMPERIAL REGIONAL
ADULT DETENTION FACILITY, et al.,

Respondents.

Case No.:  26cv1891-LL-MMP

**ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS**

[ECF No. 1]

Before the Court is Petitioner Navtej Singh Gill's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 [ECF No. 1 ("Pet.")]. Respondents filed a Response [ECF No. 5, ("Ret.")], and Petitioner did not file a Traverse. For the reasons set forth below, the Court **GRANTS** the Petition for Writ of Habeas Corpus, and **ORDERS** an immediate release.

I.      BACKGROUND

Petitioner is a native and citizen of India who came to the United States on or about September 12, 2015 near Hidalgo, Texas. Pet. ¶ 17. He applied for asylum and was placed in removal proceedings. *Id.* On August 4, 2021, Petitioner's application for asylum was denied, and on August 31, 2021, Petitioner's motion to reopen was also denied. *Id.*

1

Petitioner currently has an appeal pending with the Board of Immigration Appeals for which a brief was filed by Petitioner on August 24, 2022. *Id.* Petitioner was initially detained upon entry to the United States, but was later released shortly thereafter. *Id.* ¶ 18. Petitioner states that he complied with all ICE conditions, including reporting requirements, check-ins, address updates, and any other conditions imposed. *Id.* On or about December 4, 2025, Petitioner was detained by ICE and transferred to the Imperial Regional Detention Facility. *Id.* ¶ 19. Petitioner was not given a reason why his release was revoked, nor did ICE give him an opportunity to contest his detention. *Id.* ¶ 20. Petitioner states that he has demonstrated "suitability for release, including residing in the country for almost ten (10) years without posing any flight risk, was employed, had established his life here, and a stable residence in Fresno, California." *Id.* ¶ 21.

Petitioner alleges in the instant Petition that the agency's actions violate the Due Process Clause and the Immigration Nationalities Act and its implementing regulations. *Id.* ¶¶ 26-33. He seeks a writ of habeas corpus directing an immediate release. *Id.* at 5.

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Hamdi*, 542 U.S. at 536 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)).

/ / /

/ / /

/ / /

## III.    DISCUSSION

Petitioner argues that his detention violates the Due Process Clause of the Fifth Amendment.[1] Pet. ¶¶ 26-29. Respondents do not dispute that notice nor a hearing was provided; instead they argue that Petitioner is subject to mandatory detention under § 1225(b)(2). Ret. at 2. However, Respondents also concede in their Return in the last sentence that "the Government does not oppose the petition and defers to the Court on the appropriate relief." *Id.* at 3.

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

The Court finds that having been previously released on parole, Petitioner has a protected liberty interest in remaining free from detention. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (alterations in original).

---

[1] Petitioner also argues that his detention also "violates the INA and implementing regulations." Pet. ¶¶ 30-33. In light of the Court's decision herein on Petitioner's Due Process argument, the Court declines to rule on Petitioner's INA claim.

Because Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

Here, Petitioner was not given a reason why his release was revoked, nor did ICE give him an opportunity to contest his detention. Pet. ¶ 20.  In their Return, Respondents have not shown that Petitioner violated the conditions of his release or explain why he was re-detained. *See generally* Ret. Instead, Respondents concede in their Return in the last sentence that "the Government does not oppose the petition and defers to the Court on the appropriate relief." *Id.* at 3.

The Court finds that all three factors support a finding that the revocation of Petitioner's release without notification, reasoning, or an opportunity to be heard denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his parole. *See Pinchi*, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citations omitted)). Freedom from detention is a fundamental part of due process protection. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))).

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for revocation or giving him an

4

opportunity to be heard. After the initial determination that Petitioner should be released because he posed no danger to the community and was not a flight risk, Respondents have not produced any argument or evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). There is no indication that Petitioner has failed to abide by the conditions of his release. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Id.* "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Id.* The risk of erroneous deprivation of Petitioner's liberty is high because neither the government nor Petitioner has had an opportunity to determine whether there is any valid basis for his detention. *Pinchi*, 792 F. Supp. 3d at 1035 (citation omitted). It follows that the probable value of additional procedural safeguards, such as notice and a pre-deprivation hearing, is also high.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); *Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO (HC), 2025 WL 2817795, at *6 (E.D. Cal. Oct. 3, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. *See Pinchi*, 792 F. Supp. 3d at 1036 ("In immigration court, custody hearings are routine and impose a minimal cost." (quoting *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025))).

Therefore, because Respondents detained Petitioner by revoking his parole without notice or a pre-deprivation hearing in violation of the Due Process Clause, his detention is unlawful. *See, e.g., Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) (finding the petitioner's parole was revoked without notice and a hearing and without a showing of a change of circumstances, thus violating her due process rights and rendering her detention unlawful). The proper remedy for the unlawful detention is Petitioner's immediate release subject only to the conditions of his preexisting parole. *See Noori v. LaRose*, 807 F. Supp. 3d 1146, 1163–66 (S.D. Cal. 2025) (finding DHS violated the petitioner's due process rights by revoking his parole without notice or a hearing and ordering his immediate release); *Ortega*, 415 F. Supp. 3d at 970 (ordering immediate release after the petitioner was detained while out on bond without notice or pre-deprivation hearing).

Accordingly, the Court **GRANTS** Petitioner's Petition.

## IV.    CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus, and **ORDERS** Respondents to immediately release Petitioner from custody subject only to the conditions of his preexisting parole. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated:  April 21, 2026

Honorable Linda Lopez
United States District Judge

26cv1891-LL-MMP